# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DANTE H. PATTISON,

      Petitioner,

vs.

COLE MORROW, *et al.*,

      Respondents.

Case No. 2:12-cv-00315-KJD-PAL

**ORDER**

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner represented by counsel.  The matter comes before the Court on the merits of the amended petition.

**I. Procedural History**

On February 27, 2001, petitioner was charged by criminal complaint with one count of murder with the use of a deadly weapon (Count I), one count of manslaughter with the use of a deadly weapon (Count 2), two counts of murder with the use of a deadly weapon – victim over 65 years of age or older (Counts 3 and 4), and one count of possession of a firearm by an ex-felon (Count 5).  (Exhibit 1).[1]  Petitioner was arraigned the following day, and defense counsel requested a psychiatric evaluation to determine petitioner's competency to stand trial.  (*Id.*).  Petitioner was

---

[1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 17-20.

1   found to be incompetent and the state district court ordered petitioner committed to the Lake's

2   Crossing Center for further evaluation and treatment by order filed April 3, 2001.  (Exhibit 4).

3          On January 27, 2003, the state district court held a hearing to reassess petitioner's

4   competency to stand trial.  (Exhibit 2, at 7).  At the conclusion of the hearing, the state district court

5   determined that petitioner was competent to stand trial and remanded the case to the justice court for

6   a preliminary hearing.  (Exhibit 15).

7          On February 18, 2003, petitioner appeared before the justice court and waived his right to a

8   preliminary hearing.  (Exhibit 1).  Petitioner was bound over to the district court, and on February

9   21, 2003, the State filed a criminal information with the same five counts as charged in the criminal

10  complaint.  (Exhibit 16).  On February 26, 2003, petitioner entered pleas of not guilty to the charges

11  in the information.  (Exhibit 17).  On March 18, 2003, the State filed notice of its intent to seek the

12  death penalty.  (Exhibit 18).  Throughout 2003, the parties engaged in pretrial motion practice which

13  culminated in the trial court entering an order resolving those motions on July 9, 2003.  (Exhibit

14  21).  On November 19, 2003, the defense moved to continue the trial and petitioner changed his plea

15  from not guilty to not guilty by reason of insanity.  (Exhibit 22).

16         On May 13, 2004, defense counsel filed a motion in limine for the court to suppress any

17  reference to the psychological reports prepared at Lake's Crossing and to preclude the doctors or

18  staff from Lake's Crossing from testifying regarding the information contained in those reports.

19  (Exhibit 28).  Following a hearing on the motion (Exhibit 29), the trial court entered an order

20  precluding the State from calling doctors from Lake's Crossing, or their representatives, from

21  testifying about visual observations and/or conversations with and/or evaluations of petitioner while

22  he was treated at Lake's Crossing.  (Exhibit 31).  On October 13, 2004, the trial court ordered that

23  the State may present testimony regarding petitioner's stay at Lake's Crossing after an offer of proof

24  was made.  (Exhibit 2, at p. 52).

25         On March 4, 2005, the State filed an amended information, omitting Count 5, possession of

26  a firearm by an ex-felon.  (Exhibit 33).

27         The jury trial commenced on March 4, 2005, and concluded on March 12, 2005.  (Exhibit

28  34-45).  At the conclusion of trial, the jury found petitioner guilty of Counts 1-4.  (Exhibit 46).  The

penalty phase was held on March 15, 2005.  (Exhibit 48).  The jury returned a special verdict that

mitigating circumstances outweighed aggravating circumstances, and the jury sentenced petitioner

to life without the possibility of parole.  (Exhibits 47 & 48).  Another competency hearing

commenced on November 28, 2005, and concluded on December 12, 2005, at which time petitioner

was found competent and was sentenced in accordance with the jury's decision.  (Exhibits 56 & 57).

Specifically, as to Count 1, petitioner was sentenced to life imprisonment without the possibility of

parole, with an equal and consecutive sentence of life without the possibility of parole for the use of

a deadly weapon; as to Count 2, petitioner was sentenced to 48 to 120 month imprisonment; as to

Counts 3 and 4, petitioner was sentenced to life imprisonment without the possibility of parole, with

an equal and consecutive term of life without the possibility of parole for a victim over 65 years of

age.  All counts were to run concurrent.  The judgment of conviction was filed December 16, 2005.

(Exhibit 58).

Petitioner appealed his convictions.  (Exhibit 59).  By order filed December 24, 2007, the

Nevada Supreme Court affirmed the convictions.  (Exhibit 63).  Remittitur issued on January 18,

2008.  (Exhibit 64).

On May 14, 2008, with the assistance of counsel, petitioner filed a post-conviction habeas

petition in the state district court.  (Exhibit 71).  On June 25, 2009, through counsel, petitioner filed

a supplement to his petition.  (Exhibit 72).  On September 14, 2009, and November 4, 2009, the

state district court held hearings on the petition and supplement.  (Exhibits 75 & 76).  On December

18, 2009, the state district court filed findings of fact, conclusions of law, and order denying the

petition.  (Exhibit 77).

Petitioner appealed from the denial of his state post-conviction habeas petition.  (Exhibit

78).  On July 13, 2011, the Nevada Supreme Court filed an order affirming the denial of the post-

conviction habeas petition.  (Exhibit 83).  Remittitur issued on August 9, 2011.  (Exhibit 84).

Petitioner dispatched his federal habeas petition to this Court on February 14, 2012.  (ECF

No. 1).  This Court granted petitioner's motion for the appointment of counsel.  (ECF No. 6).

Petitioner filed an amended petition on February 11, 2013.  (ECF No. 16).  On March 27, 2013,

1    respondents filed an answer to the amended petition.  (ECF No. 22).  On October 17, 2013,

2    petitioner filed a reply to the answer.  (ECF No. 32).

3    **II.  Federal Habeas Corpus Standards**

4         The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

5    provides the legal standard for the Court's consideration of this habeas petition:

6              An application for a writ of habeas corpus on behalf of a person in
             custody pursuant to the judgment of a State court shall not be granted
7              with respect to any claim that was adjudicated on the merits in State
             court proceedings unless the adjudication of the claim –
8
             (1) resulted in a decision that was contrary to, or involved an
9              unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or
10
             (2) resulted in a decision that was based on an unreasonable
11             determination of the facts in light of the evidence presented in the
             State court proceeding.
12
         The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications
13
     in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect
14
     to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court
15
     decision is contrary to clearly established Supreme Court precedent, within the meaning of 28
16
     U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the
17
     Supreme Court's] cases" or "if the state court confronts a set of facts that are materially
18
     indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result
19
     different from [the Supreme Court's] precedent."  *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003)
20
     (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685,
21
     694 (2002)).  The formidable standard set forth in section 2254(d) reflects the view that habeas
22
     corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a
23
     substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 102-03
24
     (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).
25
         A state court decision is an unreasonable application of clearly established Supreme Court
26
     precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct
27
     governing legal principle from [the Supreme Court's] decisions but unreasonably applies that
28

-4-

1  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

2  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

3  than merely incorrect or erroneous; the state court's application of clearly established federal law

4  must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether

5  a state court decision is contrary to, or an unreasonable application of federal law, this Court looks

6  to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

7  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

8  In a federal habeas proceeding, "a determination of a factual issue made by a State court

9  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

10  presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If a claim

11  has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the

12  burden set in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*,

13  131 S.Ct. 1388, 1400 (2011).

14  **III.  Discussion**

15  **A.  Ground 1**

16  Petitioner asserts that his constitutional rights were violated when the trial court allowed the

17  State to introduce testimony of witnesses who observed him at the Lake's Crossing Center.  (ECF

18  No. 16, at pp. 8-10).  Petitioner acknowledges that "the State was entitled to rebut Pattison's

19  insanity defense," but argues that the State introduced the Lake's Crossing evidence for an improper

20  purpose, "to impeach him in an effort to prove his guilt."  (*Id.*, at p. 9).  Petitioner further asserts

21  that any statement he made to the evaluators at the Lake's Crossing Center should have been

22  excluded because he was not informed of his Fifth Amendment rights prior to making those

23  statements.  (*Id.*).  The Nevada Supreme Court denied this claims on direct appeal, as follows:

24  Pattison argues that the State's use of evidence obtained during his
   competency evaluation period at Lake's Crossing violated his due

25  process rights under the Fifth Amendment.  Pattison begins his
   argument with a review of McKenna v. State, Esquivel v. State, and

26  Winiarz v. State.  However, in Estes v. State, this court distinguished
   those cases from the issue presented in this case because "none of the

27  defendants in those matters placed their sanity at the time of the
   alleged criminal misconduct at issue."  In Estes, this court held that

28  the State could introduce evidence obtained during the defendant's

evaluation period at Lake's Crossing if the defendant put his sanity in question and the evidence excluded incriminating statements. Because Pattison placed his sanity into question by pleading not guilty by reason of insanity, this court's determination in Estes controls this case.

Pattison attempts to distinguish this case from Estes by arguing that he did not intend to introduce evidence obtained at Lake's Crossing in his case-in-chief or allow his experts to read reports from Lake's Crossing in developing their opinions.  In Estes, no facts suggest that the defendant relied on records from Lake's Crossing to establish the defendant's insanity defense, yet this court held that the State could introduce evidence obtained during the defendant's competency evaluation period.  When Pattison put his sanity into question by pleading not guilty by reason of insanity, he "opened the door" to the State's use of evidence obtained during Pattison's competency evaluation period at Lake's Crossing as long as that evidence did not include incriminating statements.

Pattison next asserts that statements he made to doctors at Lake's Crossing and, conversely, the doctors' reports of what he did not say to them during his competency evaluations at Lake's Crossing should have been suppressed because he was not properly advised of his Fifth Amendment rights.

This court acknowledged in Estes that "[i]interviews during psychiatric evaluations are custodial and statements made by the defendant are entitled to Fifth Amendment protection."  However, this court further stated that "when the defendant places his sanity or mental capacity at issue, a defendant's right to protection under the Fifth and Fourteenth Amendments from the disclosure of confidential communications made during a court-psychiatric evaluation relates only to the incriminating communications themselves."  Thus, the defendant's non-incriminating statements concerning his mental state are not protected by the Fifth Amendment's guarantee of due process and protection against self-incrimination.  In Estes, this court held that the defendant's statements indicating that he was fabricating his insanity defense and that were inconsistent with his later testimony were not incriminating.

When Pattison placed his sanity in question, he waived his right to object to the admission of any non-incriminating statements that he made or did not make regarding his mental health.  None of Pattison's statements or silences at Lake's Crossing were incriminating.  All of the evidence from Lake's Crossing related to Pattison's mental health and not whether he committed the crime in question.  The Lake's Crossing evidence relied upon by Dr. Thomas Bittker, the State's expert who reviewed reports from Lake's Crossing staff in developing his expert opinion, also did not contain incriminating statements but only statements regarding Pattison's mental health.

Therefore, we conclude that the district court did not err when it permitted the State to offer evidence obtained during Pattison's competency evaluation period at Lake's Crossing to rebut Pattison's case-in-chief.  Because Pattison asserted an insanity defense, his non-

1                      incriminating statements concerning his mental state were not
                     protected by the Fifth Amendment's guarantee of due process and

2                      protection against self-incrimination.

3 (Exhibit 63, at pp. 2-5) (footnotes omitted).  The Nevada Supreme Court's factual findings that

4 petitioner put his sanity at issue and that none of petitioner's statements or his silence at Lake's

5 Crossing were incriminating are entitled to a presumption of correctness.  *See* 28 U.S.C. §

6 2254(e)(1).

7                          **1.  Due Process Claim**

8       In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit held that the

9 United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly

10 prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ."

11 Therefore, the Court of Appeals was unable to conclude that the state court's evidentiary ruling was

12 an unreasonable application of clearly established federal law.  *Id.* (citing *Carey v. Musladin*, 549

13 U.S. 70, 76-77 (2006)).  Similar to *Holley*, petitioner in the instant case argues that he is entitled to

14 federal habeas relief based on the trial court's improper admission of evidence.  Petitioner has not

15 shown that the trial court's admission of evidence is contrary to or an unreasonable application of

16 clearly-established federal as determined by the United States Supreme Court.  While petitioner

17 seeks to apply the holding of *Buchanan v. Kentucky*, 483 US. 402, 421-23 (1987), to petitioner's

18 due process claim, the decision analyzes a Fifth Amendment claim of protection against self-

19 incrimination.  Moreover, petitioner has failed to meet his burden of proving that the Nevada

20 Supreme Court's ruling upholding his conviction regarding the due process issue was contrary to, or

21 involved an unreasonable application of, clearly established federal law, as determined by the

22 United States Supreme Court, or that the ruling was based on an unreasonable determination of the

23 facts in light of the evidence presented in the state court proceeding.  The Court denies federal

24 habeas relief on this ground of the amended petition.

25                        **2.  Fifth Amendment Claim**

26       In *Estelle v. Smith*, 451 U.S. 454, 468 (1981), the United States Supreme Court held that "[a]

27 criminal defendant, who neither initiates psychiatric evaluation nor attempts to introduce any

28 psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used

1    against him at a capital sentencing proceeding." Later, the United States Supreme Court held that if

2    a defendant "presents psychiatric evidence, then, at the very least, the prosecution may rebut this

3    presentation with evidence from the reports of the [psychiatric] examination that the defendant

4    requested" without violating the Fifth Amendment. *Buchanan v. Kentucky*, 483 US. 402, 422-23

5    (1987). In this case, petitioner presented psychiatric evidence in support of his insanity defense.

6    The existing United Supreme Court precedents do not clearly establish that, under these

7    circumstances, a defendant's statements made to mental health professionals as part of competency

8    evaluations violate the Fifth Amendment. Petitioner has failed to meet his burden of proving that

9    the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

10   clearly established federal law, as determined by the United States Supreme Court, or that the ruling

11   was based on an unreasonable determination of the facts in light of the evidence presented in the

12   state court proceeding. Therefore, the Court denies relief on this ground of the federal habeas

13   petition.

14        **B. Ground 2**

15        Petitioner asserts that there was insufficient evidence presented at trial to convict him of first

16   degree murder. (ECF No. 16, at pp. 10-14). Petitioner argues that the evidence was constitutionally

17   insufficient because "[t]here is not a scintilla of evidence that Pattison acted with premeditation and

18   deliberation when he shot his sister and grandparents." (*Id.*, at p. 13).

19        When a habeas petitioner challenges the sufficiency of evidence to support his conviction,

20   the court reviews the record to determine "whether, after viewing the evidence in the light most

21   favorable to the prosecution, any rational trier of fact could have found the essential elements of the

22   crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*,

23   207 F.3d 557, 563 (9th Cir. 2000). The *Jackson* standard does not focus on whether a correct guilt

24   or innocence determination was made, but whether the jury made a rational decision to convict or

25   acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Under the *Jackson* standard, the prosecution

26   has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296

27   (1992) (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023. *Jackson* presents "a

28

-8-

1  high standard" to habeas petitioners claiming insufficiency of the evidence.  *Jones v. Wood*, 207

2  F.3d 557, 563 (9th Cir. 2000).

3        Sufficiency claims are limited to a review of the record evidence submitted at trial.  *Herrera*,

4  506 U.S. at 402.  Such claims are judged by the elements defined by state law.  *Jackson*, 443 U.S. at

5  324, n.16.  The reviewing court must respect the exclusive province of the fact-finder to determine

6  the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from

7  proven facts.  *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  The district court must

8  assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the

9  determination does not appear on the record, and must defer to that resolution.  *Jackson*, 443, U.S.

10  at 326.  In evaluating a claim of insufficiency of the evidence under *Jackson*, the reviewing court

11  "'must consider all of the evidence admitted by the trial court,' regardless of whether that evidence

12  was admitted erroneously."  *McDaniel v. Brown*, 130 S.Ct. 665, 672 (2010) (quoting *Lockhart v.*

13  *Nelson*, 488 U.S. 33, 41 (1988)).

14        The Nevada Supreme Court denied petitioner's claim of insufficiency of the evidence, as

15  follows:

16        In reviewing the sufficiency of evidence to support a conviction, this
       court inquires "'whether, after viewing the evidence in the light most
17     favorable to the prosecution, any rational trier of fact could have
       found the essential elements of the crime beyond a reasonable
18     doubt.'"  Additionally, "[w]here there is conflicting testimony, the jury
       determines its weight and credibility."
19
       Pattison argues that the State failed to produce evidence that Pattison
20     was not psychotic at the time of the shooting and that the State's
       experts all testified that Pattison was suffering from drug-induced
21     psychosis.  Pattison argues that even if the jury believed the State's
       theory of drug-induced psychosis, the law regarding voluntary
22     intoxication would have prohibited a verdict that Pattison was guilty
       of first-degree murder.  Pattison also argues that if the jury believed
23     Pattison's interpretation of the evidence, the evidence required a
       verdict of not guilty by reason of insanity.
24
       To support a guilty verdict for first-degree murder, the State must
25     prove beyond a reasonable doubt that the murder was "willful,
       deliberate and premeditated."  A murder without premeditation or
26     deliberation is second-degree murder.  In a prosecution for first-
       degree murder, intent and premeditation may be deduced from the
27     circumstances of the killing.  A defendant may contend that he was
       incapable of forming the requisite deliberation or premeditation
28     because he was voluntarily intoxicated; however, intoxication does

-9-

1    not legally preclude a finding that the defendant premeditated or
     deliberated.  This is a question of fact that the jury must determine.
2
     The State presented evidence that Pattison's behavior at the time of
3    the shooting was not consistent with the behavior of a person
     suffering from delusions.  The State further offered evidence that
4    Pattison struggled with his sister for control of the gun and shot her
     despite her pleas for him to put the gun away.  The State also offered
5    evidence that Pattison shot all of his victims at close range, shot some
     of them multiple times, and that every shot fired hit a victim.  All of
6    these facts support a finding that Pattison willfully and deliberately
     killed his victims.  While there is evidence that Pattison may have
7    been suffering from a drug-induced delusion, we conclude that the
     record contains sufficient evidence from which a reasonable juror
8    could have found that Pattison was guilty of first degree murder.

9    Pattison's second argument, that if a jury believed Pattison's
     interpretation of the evidence it was required to return a verdict of not
10   guilty by reason of insanity, implies that the State had the burden to
     prove that Pattison was sane at the time of the shooting and is
11   therefore meritless.  The State is not required to prove that a defendant
     is sane at the time he committed a crime.  A defendant raising an
12   insanity defense bears the burden of proving by a preponderance of
     the evidence that at the time of the alleged crime he suffered from
13   delusions that rendered him incapable of determining the
     wrongfulness of his actions or understanding that his actions were not
14   authorized by law.

15   Because the burden was on Pattison, not the State, to prove his
     insanity and Pattison did not meet that burden, we conclude sufficient
16   evidence exists from which a reasonable juror could determine that
     Pattison was able to form the requisite intent to justify a verdict of
17   first-degree murder.

18   (Exhibit 63, at pp. 5-7) (footnotes omitted).  The factual findings of the state court are presumed

19   correct.  28 U.S.C. § 2254(e)(1).  While petitioner asserts that he presented evidence in support of

20   an insanity defense at trial, the State presented evidence to rebut petitioner's insanity defense.

21   (Exhibits 38-41).  This Court must presume under *Jackson* that the jury resolved any evidentiary

22   conflicts in favor of the prosecution.  *Jackson*, 443 U.S. at 326.  This Court finds that, after viewing

23   the evidence in the light most favorable to the prosecution, any rational trier of fact could have

24   found the essential elements of first degree murder, beyond a reasonable doubt.  *See Jackson*, 443

25   U.S. at 319.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

26   ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

27   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

28

1  determination of the facts in light of the evidence presented in the state court proceeding. Federal

2  habeas relief is denied as to Ground 2 of the amended petition.

3      **C. Ground 3**

4          Petitioner asserts that his trial counsel were ineffective for failing to object to the State's use

5  of his post-*Miranda* silence and for failing to object to the State shifting the burden of proof to the

6  defense. (ECF No. 16, at pp. 14-16).

7          **1. Standard for Ineffective Assistance of Counsel**

8          Ineffective assistance of counsel claims are governed by the two-part test announced in

9  *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a

10  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1)

11  counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced

12  the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).

13  To establish ineffectiveness, the defendant must show that counsel's representation fell below an

14  objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there

15  is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

16  would have been different. *Id.* A reasonable probability is "probability sufficient to undermine

17  confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be

18  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

19  order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's

20  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

21  *Id.*

22          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

23  performance of counsel resulting in prejudice, "with performance being measured against an

24  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

25  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an

26  ineffective assistance claim, a federal habeas court may only grant relief if that decision was

27  contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,*

28

1  540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide

2  range of reasonable professional assistance.  *Id.*

3       The United States Supreme Court has described federal review of a state supreme court's

4  decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v.*

5  *Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113,

6  129 S.Ct. 1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We

7  take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of §

8  2254(d).'"  *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an

9  ineffective assistance of counsel claim is limited to the record before the state court that adjudicated

10  the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.  The United States Supreme

11  Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding

12  claims of ineffective assistance of counsel:

13       Establishing that a state court's application of *Strickland* was
         unreasonable under § 2254(d) is all the more difficult.  The standards
14       created by *Strickland* and § 2254(d) are both "highly deferential," *id.*
         at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117
15       S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
         tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at
16       1420.  The *Strickland* standard is a general one, so the range of
         reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at
17       1420.  Federal habeas courts must guard against the danger of
         equating unreasonableness under *Strickland* with unreasonableness
18       under  § 2254(d).  When § 2254(d) applies, the question is whether
         there is any reasonable argument that counsel satisfied *Strickland's*
19       deferential standard.

20  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "A court considering a claim of ineffective

21  assistance of counsel must apply a 'strong presumption' that counsel's representation was within the

22  'wide range' of reasonable professional assistance."  *Id.* at 787 (quoting *Strickland*, 466 U.S. at

23  689).  "The question is whether an attorney's representation amounted to incompetence under

24  prevailing professional norms, not whether it deviated from best practices or most common

25  custom."  *Id.* (internal quotations and citations omitted).

26       **2.  Counsel's Failure to Object to Use of Petitioner's Post-*Miranda* Silence**

27       Petitioner claims that trial counsel was ineffective for failing to object to the State's

28  questions to mental health experts concerning petitioner's silence when asked about alleged

-12-

1    delusions.  (ECF No. 16, at p. 15).  The Nevada Supreme Court denied this claim in its order

2    affirming the denial of petitioner's state post-conviction habeas petition, as follows:

3                First, appellant argues that trial counsel was ineffective for failing to
                object to references made by the State to the length of time appellant
4                was observed at Lake's Crossing and to comments on appellant's
                silence at Lake's Crossing.  Appellant failed to demonstrate that his
5                trial counsel's performance was deficient or that he was prejudiced.
                As appellant put his sanity in question, the mental health evaluations
6                at Lake's Crossing, the time taken in forming opinions concerning
                those evaluations, and appellant's failure to fully cooperate with those
7                evaluations were admissible at trial.  See Estes v. State, 122 Nev.
                1123, 133-34, 146 P.3d 1114, 1121 (2006).  Appellant fails to
8                demonstrate a reasonable probability of a different outcome had
                counsel objected to references to the length of time appellant was
9                housed at Lake's Crossing or to his silence at that facility.  Therefore,
                appellant fails to demonstrate that the district court erred in denying
10               this claim.

11   (Exhibit 83, at p. 2).  The factual findings of the state court are presumed correct.  28 U.S.C. §

12   2254(e)(1).  Petitioner has failed to demonstrate that his counsel's performance was deficient or that

13   he was prejudiced under *Strickland*.  Petitioner has failed to meet his burden of proving that the

14   Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

15   established federal law, as determined by the United States Supreme Court, or that the ruling was

16   based on an unreasonable determination of the facts in light of the evidence presented in the state

17   court proceeding.  The Court denies habeas relief as to this claim.

18                   **3. Counsel's Failure to Object to the State Shifting the Burden of Proof**

19               Petitioner claims that counsel was ineffective for failing to object when the State asked a

20   defense expert whether he was aware that petitioner refused to provide a blood sample at the time of

21   his arrest.  (ECF No. 16, at pp. 15-16).  Petitioner claims that the question impermissibly shifted the

22   burden of proof to the defense.  (*Id.*).  The Nevada Supreme Court denied this claim in its order

23   affirming the denial of petitioner's state post-conviction habeas petition, as follows:

24               Third, appellant argues that trial counsel was ineffective for failing to
                object to the State's questions concerning appellant's refusal to
25               consent to a blood draw on the night of the murders because they
                shifted the burden of production of evidence to appellant.  Appellant
26               fails to demonstrate that he was prejudiced.  Given the testimony and
                appellant's defense of legal insanity, appellant fails to demonstrate a
27               reasonable probability that an objection to questions concerning a lack
                of a blood draw would have resulted in a different outcome in trial.
28               Therefore, the district court did not err in denying this claim.

-13-

1   (Exhibit 83, at p. 3).  The factual findings of the state court are presumed correct.  28 U.S.C. §

2   2254(e)(1).  Petitioner has failed to demonstrate that his counsel's performance was deficient or that

3   he was prejudiced under *Strickland*.  Petitioner has failed to meet his burden of proving that the

4   Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

5   established federal law, as determined by the United States Supreme Court, or that the ruling was

6   based on an unreasonable determination of the facts in light of the evidence presented in the state

7   court proceeding.  The Court denies habeas relief on this claim.

8   **IV.  Certificate of Appealability**

9         District courts are required to rule on the certificate of appealability in the order disposing of

10   a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

11   request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal,

12   petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th

13   Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v.*

14   *Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial

15   showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.;* 28

16   U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must

17   demonstrate that reasonable jurists would find the district court's assessment of the constitutional

18   claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold

19   inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of

20   reason; that a court could resolve the issues differently; or that the questions are adequate to deserve

21   encouragement to proceed further.  *Id.*  In this case, no reasonable jurist would find this Court's

22   denial of the petition debatable or wrong.  The Court therefore denies petitioner a certificate of

23   appealability.

24   **V.  Conclusion**

25         **IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus is

26   **DENIED**.

27         **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

28   **APPEALABILITY.**

1    **IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT**

2   **ACCORDINGLY.**

3          Dated this ____29____ day of June, 2015.

4

5

6                                      _____
                                       UNITED STATES DISTRICT JUDGE

7

8

-15-